**CONSOLIDATED RAIL CORPORATION,**
Plaintiff,

v.

**M/T HOEGH FORUM (In Rem) and Leif Heogh [sic] & Co., S/A and Petrolsea Inc. of Monrovia, Defendants.**

**Civ. A. No. 85–0226.**

United States District Court,
E.D. Pennsylvania.

Dec. 11, 1985.

Francis X. Scanlan, Deasey, Scanlan & Bender, Ltd., Philadelphia, Pa., for plaintiff.

Thomas E. Seus, Philadelphia, Pa., for Petrolsea.

A. Robert Degen, Philadelphia, Pa., for other defendants.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff Consolidated Rail Corporation ("Conrail") claims that it has suffered approximately $24,503.70 in economic losses because the defendant ship M/T Hoegh Forum (the "vessel") was berthed without its consent from September 24–26, 1984 at Pier 124, South Wharves, Philadelphia, Pennsylvania ("Pier 124 or the "pier"), a pier owned by Conrail. Defendants Leif Hoegh & Co., S/A ("Leif Hoegh") (the owner and operator of the M/T Hoegh Forum) and Petrolsea Inc. of Monrovia ("Petrolsea") have each moved for summary judgment and/or judgment on the pleadings.[1] The court grants summary judgment in favor of the defendants and against the plaintiff.

Conrail invokes this court's admiralty and maritime jurisdiction within the meaning of Fed.R.Civ.P. 9(h) and 28 U.S.C. § 1333. Conrail is the owner of Pier 124, South Wharves, Philadelphia, Pennsylvania. The pier is operated by Northern Contracting Company ("Northern"). The vessel, operated as a carrier of coal in ocean transportation by its owners, Leif Hoegh, was berthed at Pier 124 with the consent of Conrail or Northern on September 23, 1984. At approximately 7:00 a.m. that day it commenced loading coal; loading was scheduled for completion at approximately 6:30 p.m. on September 24, 1984.

Conrail's "Rules and Regulations Governing the Registration, Order of Assignment to Berth and Removal of Vessels at Pier 124, South Philadelphia, PA, effective September 7, 1982" (the "Rules and Regulations") provide in part:

> In no case shall a Vessel remain in its berth more than 30 minutes after loading is completed or terminated by the Master and all safe conditions for leaving berth have been met, unless special arrangements are made with the Pier Manager.

According to these Rules and Regulations, if the coal were loaded according to schedule, the vessel would leave Pier 124 by 7:00 p.m. on September 24, 1984, if all safe conditions for leaving berth had been met, unless "special arrangements" had been made.

On September 24, 1984, Petrolsea invoked this court's admiralty and maritime jurisdiction against Leif Hoegh for breach of a charter party involving a ship other than the M/T Hoegh Forum. *Petrolsea Inc. of Monrovia v. Leif Hoegh & Co., S/A*, Civil Action No. 84–4558. Petrosea's complaint provided in part:

> 4. On information and belief, Leif Hoegh cannot be found within the district of this court.
>
> 5. On information and belief the vessel Hoegh Forum belongs to Leif Hoegh and is now, or during the pendency of this action, will be within jurisdiction of this Court.

. . . . .

WHEREFORE, plaintiff prays:

. . . . .

> (b) That a writ of attachment be issued against the M/T HOEGH FORUM, her engines, boilers, etc., pursuant to Rule B of the Federal Supplemental Admiralty Rules and the practice of this Court, and that all persons having or claiming any interest therein be cited to appear and answer under oath, all and singular the matters aforesaid, and that judgment be entered in favor of plaintiff for the damages aforesaid, with interest, costs and disbursements and that said vessel be condemned and sold to pay the same;

. . . .

That same day this court issued an "Order Appointing Substitute Custodian" (C.A. No. 84–4558). The Order provided in part:

> The vessel is currently berthed at Pier 124 South, Philadelphia, Pennsylvania. Ring Detective Agency has agreed to

---

1. Since the parties rely on various documents other than the pleadings, these motions are properly considered only as motions for summary judgment. Fed.R.Civ.P. 12(c). Some but not all of these documents were properly authenticated; the court has considered only those which were properly authenticated. Fed.R. Civ.P. 56(c), 56(e).

assume responsibility for the safekeeping of said vessel, and has consented to act as custodian, and for a sum including wharfage and routine services required for the safekeeping of the vessel substantially less than required by the United States Marshal.

.     .     .     .     .

Therefore, it is hereby ORDERED that the Clerk of Court issue a warrant for the arrest of the M/T HOEGH FORUM and that the United States Marshal for the Eastern District of Pennsylvania be, and he is hereby authorized and directed forthwith to seize said vessel, her engines, tackle, etc., pursuant to said warrant for arrest, and upon his seizure to surrender the possesion thereof to Ring Detective Agency and that upon surrender the Marshal shall be discharged from his duties and responsibilities for the safekeeping of said vessel.

It is further ORDERED that Ring Detective Agency be and is hereby appointed the custodian of said vessel to retain the same in their custody pursuant to the said warrant for arrest until further order of the Court. No movement of vessel permitted without further order of the Court.

At 9:00 a.m. on September 25, 1984, by letter, counsel for Conrail requested the court to modify the "Order Appointing Substitute Custodian" entered the day before. The letter stated in part:

At no time has Consolidated Rail Corporation granted to Petrolsea Inc. of Monrovia the right to berth the vessel M/T HOEGH FORUM for the herein attachment. The loading of the M/T HOEGH FORUM at Pier 124 is completed. At the present time, operations at Pier 124 are very busy and there are several vessels scheduled to load Pier 124. Pier 124 cannot work efficiently with the M/T HOEGH FORUM berthed at the said Pier. Because the M/T HOEGH FORUM is berthed at Pier 124 Consolidated Rail Corporation estimates that its operations are being interfered with at costs of $36,000.00 per day.

Consolidated Rail Corporation hereby requests the Court to modify the Order Appointing Substitute Custodian, that Plaintiff be directed to make the necessary arrangements to relocate the M/T HOEGH FORUM and we are enclosing herewith a proposed Order for the Court's consideration. We have delivered a copy of this letter and proposed Order to ... local counsel for Plaintiff and ... local counsel for Defendants.

The court held a conference call with counsel for Conrail, Petrolsea, and Leif Hoegh. Because the court was conducting a trial, counsel were directed to attempt to resolve their dispute and to come to Chambers at 5:00 p.m. to report their progress. During the day, counsel for Conrail, Petrolsea and Leif Hoegh communicated regarding the disposition of the vessel. Counsel met in Chambers at approximately 5:00 p.m.; pursuant to stipulation of the parties approved by the court, an Order was entered allowing the vessel to be moved from Pier 124 to Bigstone Beach Anchorage in Delaware but providing that the court would retain its quasi-in-rem jurisdiction over the vessel in Civil Action No. 84–4558. The M/T Hoegh Forum moved on the next tide at approximately 1:15 a.m. on September 26, 1984. *Petrolsea Inc. of Monrovia v. Leif Hoegh & Co., S.A.*, Civil Action No. 84–4558, was dismissed pursuant to Fed.R. Civ.P. 41(a) on December 5, 1984.

Conrail submitted a claim to Leif Hoegh for damages in the amount of $24,503.70 representing costs of standby dock crews, train and engine crews, communications and signal maintenance, and car hire allegedly incurred because the M/T Hoegh Forum remained at Pier 124 from September 24 until September 26, 1984. Conrail commenced this action against the M/T Hoegh Forum, Leif Hoegh, and Petrolsea on January 16, 1985.

Defendant Leif Hoegh advances two grounds for summary judgment in its favor:

(1) the damages sought by Conrail are not recoverable; and,

(2) the M/T Hoegh Forum berthing was pursuant to court order and privileged.

■ Plaintiff's complaint states only that "[a]s a result of the aforesaid unauthorized berthing of the M/T Hoegh Forum during the period September 24–26, 1984, plaintiff has sustained expenditures for labor, loss of use and loss of income as nearly as can be ascertained in the amount of approximately $24,503.70...." (Para. 15). Plaintiff's response to defendants' motions for summary judgment suggest that its theory of liability is that defendants tortiously interfered with plaintiff's contractual relations. But there is no cause of action for negligent interference with contractual relations in the absence of physical damage. *Getty Refining and Marketing Company v. M/T FADI B and FADI B Shipping Corp.*, 766 F.2d 829 (3d Cir.1985). *Accord*, Restatement (Second) of Torts § 766C (1977). In *Getty Refining*, the Court of Appeals relied heavily on *Robins Drydock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). In *Robins Drydock*, a time charterer sued for profits lost because defendant dry dock's negligent damage to the vehicle's propeller extended by two weeks the time the vessel was in dry dock. The Supreme Court, in an Opinion by Justice Holmes, held plaintiff could not recover:

> [N]o authority need be cited to show that as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong.... The law does not spread its protection so far.

*Id.* at 309, 48 S.Ct. at 135.

In *Getty Refining*, plaintiff sought to recover for loss of use of its pier from delay in discharge of the M/T FADI B. The FADI B was berthed at plaintiff's pier when a crack

> was discovered in the ship's deck and hull. Upon being discovered by the vessel's crew members, cargo discharge was stopped. Approximately three hours later the United States Coast Guard ordered the FADI B to cease cargo operations and ordered the vessel to remain at her berth until such time as a safe plan for discharging the balance of the cargo could be implemented. Pursuant to the express authorization of the Coast Guard, and in accordance with a plan developed by the vessel's classification society, cargo discharge resumed and was completed on January 17 at 10:55 a.m. The vessel then departed from the dock. Interruption of the cargo discharge extended for a period of two days, 13 hours and 15 minutes. It was determined that a defective weld in the main deck plating, welded in early spring 1980 in Piraeus, Greece, caused the crack....

766 F.2d at 830. The Court of Appeals held that, in the absence of physical damage to its pier, plaintiff could not recover for economic losses resulting from defendant's negligence. *Id.* at 833.

Here, as in *Getty Refining*, plaintiff's alleged damages flow from its contractual relations with others seeking to use its pier and not its property right in its pier as such. *Id.* The claim here must be considered as one for the negligent interference with contractual relations; as in *Getty Refining*, no physical damage is alleged to the pier and defendant is therefore entitled to summary judgment as a matter of law.

Plaintiff has not established any facts supporting a cause of action for intentional interference with contractual rights by defendant Leif Hoegh. Federal Rule of Civil Procedure 56(e) does not allow a party resisting a motion for summary judgment to rest on bare assertions, conclusory allegations or suspicions. *Fireman's Insurance Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965 (3d Cir.1982); *Larry v. Penn Truck Aids, Inc.*, 94 F.R.D. 708 (E.D.Pa.1982). Even if Leif Hoegh intentionally breached its charter party with Petrolsea, that would not mean it intentionally interfered with plaintiff's contracts when Petrolsea arrested its vessel, the M/T Hoegh Forum. Leif

Hoegh is also entitled to summary judgment as a matter of law for intentional interference with the contractual relations of Conrail.

■ An unjust enrichment theory has not been suggested by plaintiff but the court notes that such a theory would be unavailing. Conrail's damages apparently aggregate the costs of standby labor and rail car hire which was paid for by Conrail or Northern and which would have been used if another ship had been able to use Pier 124 on September 24–26, 1984. Those costs would normally be recovered from a vessel berthed pursuant to contract, but Leif Hoegh and the M/T Hoegh Forum did not benefit from these expenditures and hence no cause of action can lie for unjust enrichment. Restatement (Second) of Restitution § 1 (1983). These defendants are entitled to summary judgment as a matter of law on any such theory.

■ Furthermore, defendant Leif Hoegh's conduct was privileged because it was pursuant to court order. The vessel was arrested pursuant to a court order providing in part: "[n]o movement of vessel permitted without further order of the court." Leif Hoegh's compliance with an order of a court with jurisdiction to issue that order is privileged. Restatement (Second) of Torts § 210. *Cf. Stevens v. Bonnie Doone*, 655 F.2d 206 (9th Cir.1981) (refusing to grant owner of vessel detention damages resulting from arrest). There is no evidence of any bad faith or any other conduct on the part of Leif Hoegh sufficient to divest its conduct of this privileged character. Defendant Leif Hoegh is entitled to summary judgment on this alternative ground as a matter of law.[2]

Defendant Petrolsea also alleges that the type of damages sought by Conrail are not recoverable and that berthing the vessel was privileged because pursuant to court order. The court similarly grants summary judgment in Petrolsea's favor.

If plaintiff's complaint is an attempt to state a cause of action against Petrolsea for negligent interference with contractual relations in the absence of physical damages, such claim is barred under *Getty Refining* and *Robins Drydock, supra.*

Plaintiff has also failed to establish intentional interference with contractual relations by defendant Petrolsea. The gravamen of that cause of action is an intentional and *improper* interference not mere knowledge of likely consequences. Restatement (Second) of Torts § 766A. *Cf. Franklin Music v. American Broadcasting Companies*, 616 F.2d 528, 543–44 (3d Cir.1979) (Pennsylvania law); *Federal Commerce & Navigation Company, Ltd. v. M/V Marathonian*, 528 F.2d 907 (2d Cir.1975) ("intentional wrongdoing"), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976).

■ In responding to Petrolsea's motion for summary judgment, plaintiff has submitted the affidavit of William R. Burns, Jr., President of Northern Contracting Company. Mr. Burns avers that before the M/T Hoegh Forum was arrested he advised Petrolsea that the vessel would have to leave Pier 124 as scheduled because the M/V Ronnes was going to use the berth. But even if the costs Conrail would incur because of the M/T Hoegh Forum's arrest were known to Petrolsea, obtaining the arrest of the vessel would not establish an *intentional* interference with contractual relations. At most, plaintiff would prove that Petrolsea had the M/T Hoegh Forum arrested although it was aware of the possibility of economic detriment to Conrail. There is no evidence of malice or improper motive by Petrolsea.[3] Therefore, even if plaintiff has asserted intentional interference with contractual relations on the part

---

**2.** Plaintiff in its response did not explicitly contest this ground of defendant Leif Hoegh's motion for summary judgment. The privilege here bars any cause of action for intentional interference with contractual relations or unjust enrichment.

**3.** There is no support in the record for an allegation that Petrolsea attempted to deceive the court at any point during Civil Action No. 84–4558. Plaintiff's argument rests on an unreasonable construction of Petrolsea's submissions in that case.

of Petrolsea, Petrolsea is entitled to summary judgment as a matter of law.

Because the costs sought by Conrail were not expended for the benefit of Petrolsea, Petrolsea is entitled to summary judgment on any claim of unjust enrichment. Restatement (Second) of Restitution § 1 (1983).

■ Whatever the theory of recovery, defendant Petrolsea is also entitled to assert a claim of privilege in its defense. Petrolsea sought the arrest of the vessel in good faith to establish jurisdiction in Civil Action No. 84–4558; such action is privileged. Restatement (Second) of Torts § 210; *Stevens v. Bonnie Doon,* 655 F.2d 206, 209 (9th Cir.1981); *The Swedish Bark Adolph,* 5 F. 114, 115 (S.D.N.Y.1880). There is no malice, action in bad faith or other ground with any support in the record to justify denial of Petrolsea's claim of privilege. Therefore, Petrolsea is entitled to summary judgment on its claim of privilege regardless of the basis of plaintiff's claim for damages.

Therefore, summary judgment will be entered in favor of the vessel, Leif Hoegh, and Petrolsea.[4]

---

**4.** Defendants' counterclaims which in reality are motions for sanctions under Fed.R.Civ.P. 11 are dealt with by separate Order.