IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Nos. 00-30611, 00-30944

_____

RESERVE MOORING INC

Plaintiff - Appellee

versus

AMERICAN COMMERCIAL BARGE LINE, LLC;
ASSOCIATED TERMINALS, LLC

Defendants - Appellants

_____

Appeals from the United States District Court for the
Eastern District of Louisiana

_____

May 16, 2001

Before GARWOOD,  HALL,[*] and BARKSDALE, Circuit Judges.

HALL, Circuit Judge:

I.  Facts and Procedural History

Plaintiff Reserve Mooring, Inc. (Reserve) maintains a midstream mooring

facility at Mile 138.3 on the Mississippi River.  The mooring facility consists of five

buoys and anchor piles, which Reserve installed pursuant to a permit from the

_____

[*]Circuit Judge of the Ninth Circuit, sitting by designation.

United States Army Corps of Engineers.[1]  On May 5, 1998, while moored at the

site, a barge owned and operated by defendant American Commercial Barge Line

(ACBL) sank while goods were being unloaded to it from another barge owned by

defendant Associated Terminals (Associated).  Although the accident did not cause

any physical damage to the mooring facility, the site remained blocked until salvage

operations were completed on August 20, 1998.

Reserve sued ACBL and Associated in federal district court, invoking the

district court's admiralty jurisdiction.  Reserve seeks to recover its lost income

resulting from the loss of use of the mooring site allegedly caused by Defendants'

negligence.  Defendants twice moved for summary judgment, arguing that Reserve

is precluded from recovering its purely economic losses under Louisiana ex rel.

Guste v. M/V TESTBANK, 752 F.2d 1019 (5th Cir. 1985) (en banc), because (1)

there was no physical damage to the mooring facility, and (2) Reserve did not have

a proprietary interest in the facility.  The district court denied both motions in orders

dated November 30, 1999, and April 26, 2000.  On June 27, 2000, the district court

---

[1]The permit was originally issued to Reserve Barge Service, Inc., who later transferred the permit to Cargo Transfer, Inc.  Plaintiff installed its buoys and anchor piles after it entered into an agreement with Cargo Transfer for the use of the permit.  Cargo Transfer has since transferred the permit to Tri-Parish Barge, Inc.  After operating the mooring facility for a period of time, Plaintiff leased the mooring facility to Lucy Marine Services, Inc., which was operating the site at the time of the accident.

certified both orders for immediate appeal.[2]  Defendants filed a timely petition for

permission of appeal, which this court granted on August 1, 2000.[3]  We thus have

jurisdiction over Defendants' interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II.  Standard of Review

The district court's decisions on a motion for summary judgment are

reviewed *de novo*.  Maher v. Strachan Shipping Co., 68 F.3d 951, 954 (5th Cir.

1995).  Summary judgment is proper if there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); Maher, 68 F.3d at 954.

## III.  Discussion

Defendants contend that they are entitled to summary judgment because

Reserve did not suffer any physical damage to a proprietary interest as required by

Robins Dry Dock and Repair Co. v. Flint, 275 U.S. 303 (1927), and TESTBANK as

a prerequisite to recovery of economic damages in cases of unintentional maritime

tort.  Reserve does not dispute that it suffered no physical damage to its buoys and

---

[2]The district court first certified its orders for interlocutory appeal on May 5, 2000.  When Defendants failed to file a timely petition for permission to appeal, see 28 U.S.C. § 1292(b) (ten days), the district court re-certified its orders on June 28, 2000.

[3]Our order granting Defendants leave to appeal mentioned only the district court's April 2000 order.  Because the district court certified for immediate appeal both the April 2000 order and the November 1999 order, under 28 U.S.C. § 1292(b), we have discretion to permit appeal of both certified orders, which we hereby grant.  See 28 U.S.C. § 1292(b).

anchor piles, and that its suit is for lost income only.[4]

In Robins Dry Dock, the time charterers of a vessel sued for the loss of use of the vessel after the defendant dry dock negligently damaged the vessel's propeller. The Supreme Court held that "as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong." 275 U.S. at 309. Because the time charterers had no property interest in the vessel, but only a contractual relation with the vessel's owners, the Court denied recovery. Id. at 308-09.

Sitting en banc, this court elaborated on Robins Dry Dock in TESTBANK. The M/V TESTBANK collided with another vessel in the Mississippi River Gulf Outlet and caused a chemical spill, which resulted in the closure of the outlet for several weeks. Suits were filed by shipping interests, marina and boat rental operators, fishermen, shops, and restaurants to recover their economic losses resulting from the loss of use of the outlet. The court examined the "pragmatic

---

[4]In its June 28, 2000, certification order, the district court identified the controlling question as whether Reserve had a sufficient proprietary interest in the mooring facility to sustain a claim for economic damages. Our review is not limited to the particular question identified by the district court, but may extend to "any issue fairly included within the certified order[s]." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996). Thus, we may review the issue of whether Reserve suffered physical damage as well as whether Reserve possessed a sufficient proprietary interest.

limitation on the doctrine of foreseeability" established in <u>Robins Dry Dock</u>, and held that physical injury to a proprietary interest is a prerequisite to recovery of economic losses in cases of unintentional maritime tort. 752 F.2d at 1022-23, 1028-29.

In ruling on Defendants' motions for summary judgment, the district court reasoned that the <u>TESTBANK</u> rule is merely an application of the general requirement that damage be foreseeable to be recoverable in tort. Therefore, the court reasoned, plaintiffs may recover where, as here, there was no physical damage but the harm was "clearly foreseeable."[5] However, in <u>TESTBANK</u>, this court considered and rejected just such a case-by-case foreseeability approach to recovery of economic damages in cases of unintentional maritime tort. <u>Id.</u> at 1028-29. The court determined that such an approach failed to provide a "determinable measure of the limit of foreseeability." <u>Id.</u> at 1028. The court instead chose the predictability afforded by the "bright line" rule that allows plaintiffs to recover economic losses only where the plaintiff has suffered physical injury to a proprietary interest. <u>Id.</u> at 1029. This court has not retreated from <u>TESTBANK</u>'s physical injury requirement.

---

[5]The district court relied on <u>Sekco Energy, Inc. v. M/V MARGARET CHOUEST</u>, 820 F. Supp. 1008 (E.D. La. 1993). In <u>Sekco Energy</u>, the district court held that despite the fact that the plaintiff suffered no physical damage, <u>TESTBANK</u> did not bar the plaintiff's claim for purely economic damages because the plaintiff's relationship to the alleged tort was "not remote." <u>Id.</u> at 1011.

See, e.g., Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., 71 F.3d 198 (5th Cir. 1995) (holding that the plaintiff's firing of gas in order to save its gas wells after the defendant damaged a gas riser owned by a third party constituted physical damage to a proprietary interest that allowed the plaintiff to recover for the lost gas); Consolidated Aluminum Corp. v. C.F. Bean Corp., 772 F.2d 1217 (5th Cir. 1985) (holding that the owner of a manufacturing plant could recover economic losses incurred after the defendant negligently punctured a gas pipeline leading to the plaintiff's plant, and the resulting loss of gas flow caused physical damage to the plaintiff's plant machinery); Domar Ocean Transp., Ltd. v. M/V ANDREW MARTIN, 754 F.2d 616 (5th Cir. 1985) (allowing recovery of economic losses arising out of the loss of use of the plaintiff's barge/tug unit after the unit was damaged in a collision).

Reserve argues that because the sinking of the barge physically prevented any other vessel from using its mooring site while the barge was being salvaged, it is entitled to recover its lost income. Merely because other vessels were unable to moor at Reserve's facility for a period of time, however, does not mean that Reserve has suffered physical injury entitling it to recover purely economic losses. For example, in Getty Refining and Marketing Co. v. MT FADI B, 766 F.2d 829 (3d Cir. 1985), the defendant's ship was forced to remain in the plaintiff's marine

terminal for several days after it sustained a crack in its deck and hull while unloading cargo. The plaintiff sought to recover its economic losses incurred when other ships were unable to dock at the plaintiff's facility. The Third Circuit denied the plaintiff recovery for its purely economic losses because the defendant's negligence did not result in any physical harm to the plaintiff's facility, but only interfered with the plaintiff's contractual relations with other vessels scheduled to use the dock. Id. at 833; see also Consolidated Rail Corp. v. M/T HOEGH FORUM, 630 F. Supp. 83, 86 (E.D. Pa. 1985) (rejecting a claim for economic losses incurred when the defendant's ship was ordered by a court to remain at the plaintiff's berthing facility and thereby prevented the use of the facility). Like the plaintiff in MT FADI B, Reserve cannot escape the fact that Defendants' negligence did not result in physical damage to Reserve's mooring facility, but only interfered with Reserve's business expectancy by preventing other vessels from mooring at the facility for a period of time.

## IV. Conclusion

Under TESTBANK, physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort. Because Reserve suffered no physical injury, its claim for purely economic damages must be

denied.[6]  The district court thus erred in failing to grant summary judgment in favor

of Defendants.

REVERSED.

---

[6]Because we conclude that Reserve has not met the physical injury requirement, we need not reach Defendants' claim that Reserve also lacks a sufficient proprietary interest in the mooring facility to satisfy <u>TESTBANK</u>.