270 F.Supp.2d 1112 (2003)
In Matter of THE COMPLAINTS OF THE AMERICAN MILLING COMPANY, UNLIMITED, H & H Marine, Inc. and American Milling, L.P., a limited partnership and Winterville Marine Services, Inc., for exoneration from or limitation of liability, Petitioners.
No. 4:98CV575SNL.
United States District Court, E.D. Missouri, Eastern Division.
June 12, 2003.
Alan K. Goldstein, John R. Halpern, Gary T. Sacks, Daryl F. Sohn, Goldstein & Price, L.P., St. Louis, MO, for American Milling Co., Un Limited, H&B Marine, Inc. & American Milling, LP.
Ralph Levy, III, Oelbaum & Brown, Kirkwood, MO, for Karen G. Cruse.
Bertram Cooper, Kurt C. Hoener, Bertran Cooper, P.C., St. Louis, MO, for Larry Dees.
Keith G. Liberman, Liberman Law Firm, LLC, Clayton, MO, Stan J. Goodkin, Goodkin Law Office, St. Louis, MO, for Sonya Owten.
*1113 William B. England, St. Louis, MO, for Lue Willie Harvey & James Lewis Brown.
William R. Bay, Raymond L. Massey, Michael D. O'Keefe, Sr., John S. Farmer, Suzanne L. Montgomery, Thompson Coburn, St. Louis, MO, for President Riverboat Casinos, Inc.

MEMORANDUM OPINION
LIMBAUGH, Senior District Judge.
This is an admiralty action involving the allision of the M/V ANNE HOLLY with the Eads Bridge, and the secondary allision by one or more barges in the M/V ANNE HOLLY's tow with the ADMRAL, on April 4, 1998. The City of St. Louis is one of several claimants seeking to recover damages associated with these allisions.[1] The City seeks damages for gaming tax revenue lost due to the closure of the ADMIRAL for a period of time subsequent to the events of April 4, 1998, and for costs related to police and fire department personnel responding to the waterfront scene on April 4, 1998.
The City has a proprietary interest in the wharf and harbor on the section of the Mississippi River where the ADMIRAL was moored on April 4, 1998. Article I, Section 1(16) of the St. Louis City Charter requires the City to provide, maintain and regulate the use of the St. Louis Harbor and wharf, including that part of the levee where the ADMIRAL was moored. The City does not have any proprietary interest in the ADMIRAL. Although the AMIRAL sustained damage[2], the levee and/or wharf did not sustain any physical damage on April 4, 1998 for which the City seeks damages.
It is well-established that where purely economic losses are concerned, such as wrongful interference with contractual or business interests, there is no recovery absent direct physical damage to property or a proprietary interest. Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). Negligently inflicted injuries to purely economic interests are not compensable, even if the injuries arise due to interference with contractual rights involving other parties. Cahokia Marine Service v. American Barge and Towing Co., 635 F.Supp. 830 (E.D.Mo.14986)(adopting Robins Dry Dock), affd 815 F.2d 711 (8th Cir.1987)(unpublished); In re Williamson Leasing Co., 577 F.Supp. 890 (E.D.Mo.1984)(adopting Robins Dry Dock); see also, Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., et. al, 71 F.3d 198, 201 (5th Cir.1995); Getty Refining and Marketing Co. v. MIT FADI B, 766 F.2d 829 (3rd Cir.1985); State of Louisiana v. M/V TESTBANK, 752 F.2d 1019 (5th Cir.1985); In re Complaint of Clearsky Shipping Corp., 1998 A.M.C.1975, 1998 WL 213953 (E.D.La.1998). Physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort. Reserve Mooring, Inc. v. American Commercial Barge Line, 251 F.3d 1069 (5th Cir.2001).
The City claims that because it is responsible for the repair and maintenance of the levee and wharf where the ADMRAL was moored, "[t]he damage caused on the waterfront and to the moorings of the ADMIRAL by the collision of the run-away *1114 barges from the ANNE HOLLY is sufficient to permit the City of St. Louis to recover its loss of tax revenues due to closing of the President Casino on the ADMIRAL, and for the cost of the City's emergency response to the incident on the wharf." City's Post-Trial Brief (# 1458), pg. 2. In support of this contention the City cites IMTT-Gretna v. ROBERT E. LEE SS, 993 F.2d 1193 (5th Cir.1993). In IMTT-Gretna, the lessee of a dock berth sued for economic damages because it was unable to use its leased berth due to a ship's allision with the dock. The lessee argued that it had a proprietary interest in the dock but both the district court and the Fifth Circuit Court of Appeals disagreed. "The Fifth Circuit states that the requirements for proprietary interest are actual possession or control, responsibility for repair and responsibility for maintenance. BP NAP [the lessee] fails to meet any of the criteria." IMTT-Gretna, at 1194. Only the dock owner suffered any physical damage due to the allision, and after finding that the lessee had no control over the dock, did not own any of the dock property, and had no responsibility for repairing the damage to the dock, the appellate court held that the lessee could not recover for its alleged economic losses. Id., at 1194. In the instant case, the allision with the ADMIRAL did not result in any physical damage to the City's levee or wharf for which it seeks damages. The City seeks damages solely based upon its alleged loss revenue due to the physical damage to the ADMIRAL which the City has no propriety interest in. The City cannot escape the fact that the subject unintentional maritime tort did not result in physical damage to the levee, but only interfered with the City's business relationship and expectancy of revenue from the ADMIRAL's gambling enterprise.
Furthermore, whatever costs are associated with the use of the City's emergency personnel were incurred voluntarily, and again, under Robins Dry Dock and its progeny are not recoverable as pure economic damages lacking any physical damage to property or proprietary interest.
Consequently, as a matter of law, the City's claim for loss of gaming tax revenues during the period the ADMIRAL was closed following the events of April 4,1998, and for costs associated with emergency personnel's response to the ADMIRAL on April 4,1998 are not recoverable.

ORDER
In accordance with the memorandum opinion filed herein this date,
IT IS HEREBY ORDERED that the City of St. Louis' damage claims for loss of gaming revenue due to the closure of the ADMIRAL for a period of time subsequent to the events of April 4, 1998, and for costs related to police and fire department personnel responding to the waterfront scene on April 4, 1998 be and are DENIED. As a matter of law, such purely economic damages are not recoverable absent damage to the City's property or proprietary interest. Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).
NOTES
[1] The determination of liability regarding the allisions in connection with the claims of President Casino and the Barge Claimants have been addressed in a separate memorandum opinion.
[2] The fact that the ADMIRAL sustained damage is not disputed; however, the extent and nature of the damage is yet to be adjudicated.