193 So.2d 363 (1966)
LAKE PROVIDENCE PORT COMMISSION, Plaintiff-Appellant,
v.
BUNGE CORPORATION, Defendant-Appellee.
No. 10717.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1966.
Rehearing Denied January 4, 1967.
Writ Refused February 24, 1967.
Voelker, Ragland & Fox, and McIntosh, Hester & Gilfoil, Lake Providence, for appellant.
Captan Jack Wyly, Lake Providence, and Smith, Taliaferro & Griffing, Jonesville, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
Lake Providence Port Commission, created as an executive department of the State of Louisiana by Louisiana Revised Statutes 34:1501 and Article 6, Sec. 33 of the Louisiana Constitution is vested with authority over all the river front land in East Carroll Parish for the development of port facilities on the Mississippi River. Pursuant to this authority the Port Commission acquired 284 acres of land and developed a portion thereof as a port.
Bunge Corporation, desiring to use a portion of the improved land owned by the port commission, submitted a sealed bid for such a site in order to construct a grain facility for the loading and unloading of grain. These efforts were fruitless. Subsequently, Bunge bought 24 acres of land several miles from the property owned by the port commission and began construction of its grain facility on the banks of the Mississippi between the levee and the water front. This construction precipitated the present action which was instituted by the *364 port commission to enjoin Bunge from building an elevator on the banks of the river. Plaintiff also seeks judgment declaring its rights under the statutes and constitutional provisions creating it. Judgment was rendered recognizing the port commission as an executive department of the state with exclusive authority to reasonably regulate navigable river commerce and traffic in the port area of East Carroll Parish, Louisiana and was further recognized and adjudicated to be the "corporation of the place" for the purpose of enforcing the provisions of Article 861 and 862 of the Louisiana Civil Code in said parish. Plaintiff's demands to enjoin defendant's proposed construction on the river bank were denied from which judgment the port commission appeals.
The position of the port commission is: (1) The riparian servitude established by the Louisiana Civil Code prohibits the erection of any permanent improvement or structure on the bank, batture, accretion and alluvion of the Mississippi River in East Carroll Parish, Louisiana. (2) The port commission alone is exempt from this prohibition by reason of the Constitution and legislation which created it.
The record establishes Bunge Corporation is engaged in extensive grain and soybean business and in furtherance of such operation had located numerous elevators on navigable inland waterways. It also owns and operates a fleet of barges for river transportation of grain. Defendant had lengthy negotiations with the plaintiff in an effort to obtain an elevator site but, being unsuccessful, it sought permission of the U. S. Corps of Engineers to construct its grain facilities on its own land on the banks of the Mississippi River in East Carroll Parish approximately nine miles south of the port commission facilities.
Pursuant to the rules of its department the U. S. District Engineer gave public notice of the application and in due time advised defendant the structure was unobjectionable from the standpoint of navigation but the consent of the United States would be withheld due to the opposition filed by the port commission.
By virtue of Article 6, Sec. 33 and Article 14, Sec. 30 of the Louisiana Constitution; Louisiana Revised Statutes 34:1501 et seq. and Louisiana Civil Code Articles 455, 457, 665, 861, plaintiff contends it has absolute and complete authority over the use of the entire river bank throughout the parish of East Carroll and defendant cannot place any permanent structure thereon without its consent.
Defendant corporation admits the port commission is legally created with power to reasonably regulate commerce and traffic on the Mississippi within the entire parish of East Carroll, but contends it, as a rural riparian owner, may not be prohibited by the commission from placing improvements upon its property so long as the structures do not seriously obstruct or prevent the public use of the navigable stream or banks thereof.
Plaintiff's principal argument is that the site for defendant's proposed facility is located on the bank of the Mississippi and that as such it is subject to a servitude of use in favor of the public which forbids the erection of a permanent structure even on "one inch" of the bank and cites as authority therefor:
Article 453, Louisiana Civil Code:
"Public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation: of this kind are navigable rivers, seaports, roadsteads and harbors, highways and the beds of rivers, as long as the same are covered with water.
"Hence it follows that every man has a right freely to fish in the rivers, ports, roadsteads, and harbors."
Article 455, Louisiana Civil Code:
"The use of the banks of navigable rivers or streams is public; accordingly everyone *365 has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets, and the like.
"Nevertheless the ownership of the river banks belongs to those who possess the adjacent lands." (Emphasis added.)
Article 457, Louisiana Civil Code:
"The banks of a river or stream are understood to be that which contains it in its ordinary state of high water; for the nature of the banks does not change, although for some cause they may be overflowed for a time.
"Nevertheless on the borders of the Mississippi and other navigable streams, where there are levees, established according to law, the levees shall form the banks."
Article 509, Louisiana Civil Code:
"The accretions, which are formed successively and imperceptibly to any soil situated on the shore of a river or other stream, are called alluvion.
"The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or stream, and whether the same be navigable or not, who is bound to leave public that portion of the bank which is required by law for the public use."
Article 665, Louisiana Civil Code:
"Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works."
* * * * * *
Article 861, Louisiana Civil Code:
"Works which have been formerly built on public places, or in the beds of rivers or navigable streams, or on their banks, and which obstruct or embarrass the use of these places, rivers, streams, or their banks, may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing in the place where they are situated.
"And the owner of these works cannot prevent their being destroyed under pretext of any prescription or possession, even immemorial, which he may have had of it, if it be proved that at the time these works were constructed, the soil on which they are built was public, and has not ceased to be so since."
Plaintiff also cited the following Louisiana cases: Trustees of Town of Natchitoches v. Coe (Sup.Ct., 1824) 3 Mart., N.S., 140; Shepherd v. Third Municipality of City of New Orleans (Sup.Ct., 1844) 6 Rob. 349; Herbert v. Benson (Sup.Ct., 1847) 2 La. Ann. 770; McKeen v. Kurfust (Sup.Ct., 1855) 10 La.Ann. 523; Watson v. Turnbull (Sup.Ct., 1882) 34 La.Ann. 856; Sweeney v. Shakspeare (1890) 42 La.Ann. 614, 7 So. 729; Ruch v. City of New Orleans (Sup. Ct., 1891) 43 La.Ann. 275, 9 So. 473; Whann v. Hiller (Sup.Ct., 1903) 110 La. 566, 34 So. 689; Warriner v. Board of Commissioners of Port of New Orleans (Sup.Ct., 1913) 132 La. 1098, 62 So. 157; and Town of Napoleonville v. Boudreaux (La.App. 1 Cir., 1932) 142 So. 874.
Plaintiff admits that the case of Town of Madisonville v. Dendinger (Sup.Ct., 1949) 214 La. 593, 38 So.2d 252 is favorable to defendant but contends the facts are inapposite to the instant case and further that the case is a "maverick" in our jurisprudence.
Plaintiff argues no one within this state, whether governing authority or a private riparian owner, would have the right to make any permanent construction on the river banks were it not for the provisions of Louisiana Civil Code Article 863 and its companion, Article 14, Sec. 31, in the Louisiana Constitution. It states that Civil Code Article 863, which originated in the *366 Civil Code of 1825, was the first authority for any entity, governmental or individual, to build on the banks of a navigable stream quoting said article as follows:
"Cities, towns and villages may construct and maintain on public places, in beds of rivers, bayous or lakes, on their banks or shores, all buildings, wharves and/or other works which may be necessary for public utility, for the mooring of vessels and the loading or discharging of their cargoes, within the extent of their respective limits. As amended by Acts 1932, No. 129."
By way of summary, plaintiff concludes from the foregoing articles that within the territorial limits of East Carroll Parish and outside the municipality of Lake Providence (the only city within the parish having a population exceeding 5,000) the port commission is the only entity that can legally erect a permanent structure on the banks of the Mississippi River.
Plaintiff contends finally that through its creation it is the "corporation of the place" as referred to in Louisiana Civil Code Article 861 which has the authority to prevent defendant's proposed construction.
Louisiana Constitution Article 6, Sec. 33, creating the Port Commission provides:
"There is hereby created a commission to be known as the Lake Providence Port Commission, which shall be composed of seven members, who shall serve without compensation, and who shall be appointed as follows:
* * * * * *
"The commission shall exercise the powers herein conferred upon it, within the port area, consisting of the entire parish of East Carroll as the boundaries and limits of said parish are presently fixed by law.
* * * * * *
"The commission shall regulate the commerce, and traffic, within such port area in such a manner as may, in its judgment, be for the best interests of the state. It shall have charge of and administer public wharves, decks, sheds and landings, and shall have authority to construct or acquire and equip wharves and landings, and other structures useful for the commerce of the port area, and provide mechanical facilities therefor; to erect sheds or other structures on said wharves and landings; to maintain proper depths of water at all such wharves and landings; to provide light, water, police protection and other services for its facilities as it may deem advisable; to construct or acquire, maintain and operate basins, locks, canals, warehouses and elevators; to charge for the use of all facilities administered by it, and for all services rendered by it, such fees, rates, tariffs, or other charges as it may establish;
* * * * * *
"The Lake Providence Port Commission may acquire by expropriation in accordance with expropriation laws of the State of Louisiana, any wharves, landings or any other property necessary for the benefit and advantage of the commerce of the said commission."

* * * * * *
Article 14, Section 31 of the Constitution also pertains to the creation of port districts, and the part deemed pertinent in the solution of the present problem is:
"Section 31. The Legislature of the State of Louisiana is empowered to create port, harbor and terminal districts as political subdivisions of the State possessing full corporate powers; to fix their territorial limits; to provide for their organization and government; to define the duties, powers and jurisdiction of their governing authorities and to delegate to them authority to own, construct, operate and maintain docks, wharves, sheds, elevators, locks, slips, laterals, basins, warehouses and all other property, structures, equipment and facilities, including belt and connecting lines of railroads and works *367 of public improvement necessary or useful for port, harbor and terminal purposes; to * * * acquire by right of eminent domain, purchase, lease or otherwise, the land that may be necessary for the business of such districts; * * *"
From the Constitutional provisions quoted above the lower court for written reasons found the commission had the right to reasonably regulate commerce and traffic in the port area together with the right to acquire by expropriation any land that might be necessary for the carrying on of its business; that any reasonable rules and regulations adopted by plaintiff to govern the commerce and traffic within the port area would be binding upon Bunge including the requirement that it pay any fees, rates or other charges legally imposed upon it by plaintiff. The lower court, however, held the constitutional grant to regulate commerce and traffic within the port area did not necessarily bestow upon the commission the authority to prohibit defendant from constructing the proposed facilities on its own land merely because such construction was to be situated entirely on the bank of the Mississippi. We are in accord with this conclusion. To construe plaintiff's authority to be extensive enough to prohibit defendant from building on its own land, although located on the river side of the Mississippi River levee and falling within the broad definition of "river banks" would require a positive grant of power to the port commission by the Louisiana Constitution.
We direct our attention now to the proper interpretation of the cited codal articles. Article 455 is the basic article establishing a servitude of use in the public in and to the banks of navigable rivers or streams of Louisiana. It is to be noted, however, that this article also provides the ownership of the bank of the river is vested in the owner of the adjacent land. It seems reasonable that the owners outside of municipalities can use and develop these river banks so long as the use by the public is not obstructed. The character of the use reserved to the public must be considered as well as the nature of the land so burdened.
Article 457 designates the levees as the banks of the Mississippi and as related to the property herein the levee is more than one-quarter of a mile from the ordinary high water line. In the instant case, the land in the vicinity is classified as rural and the expanse of land between the levee and the high water mark is relatively wide, compared to that in cities, and the waterborne traffic is not congested. For these reasons the restrictions on development of land by riparian owners or their representatives need not be as extensive as in cities.
The instant case is therefore distinguishable from the cases cited, supra, by plaintiff, all of which dealt with the banks of streams within corporate limits. However, in the Dendinger case, cited supra, the Supreme Court denied the municipality the right to remove or destroy a warehouse owned by the landowner under the provisions of Article 861 of the Louisiana Civil Code holding the warehouse merely encroached upon the bank and did not prevent its use within the contemplation of the codal article.
There is no evidence in the present case to establish that defendant's elevator would obstruct or prevent the public use of the banks of the river.
Plaintiff admits its opposition to defendant's construction is stimulated by its duty to protect and increase the commission's income and in return relieve the burden of the taxpayers, all of which is admirable and noble, but is incompatible with the type of use reserved for the public by Louisiana Civil Code Article 455. The present location of the levees in the area, when considered with the defined banks of the Mississippi River (Civil Code Article 457) leads us to believe the law did not contemplate an absolute prohibition to the rural riparian owner to build between the waterline and the levee.
*368 In conclusion, it is our holding that although the land owned by defendant in the instant case is between a levee and a navigable river and is burdened with a servitude of public use it, as a riparian owner, may construct any manner of works on its land provided it does not obstruct the public use. If and when a structure on a river bank interferes with the servitude of public use, the owner, by appropriate legal procedure, may be required to remove it. We do not agree with plaintiff's position that the proposed construction is prohibited per se as a matter of law. We find that the constitutional and legislative acts creating the port commission conferred upon it the right to acquire land, construct wharves, etc., and to regulate river navigation in East Carroll Parish but did not confer the right to prohibit reasonable use of property owned by others adjacent to the banks of navigable waters in the parish.
There is no dispute over the lower court's declaratory judgment. Accordingly, the judgment appealed from is affirmed at appellant's cost.
Affirmed.