Dear Mr. Tutt:
This office is in receipt of your request for an opinion of the Attorney General in regard to the power of the Caddo-Bossier Port Commission in establishing a permitting procedure for businesses operating on and/or adjacent to the Red River. You indicate the Commission has established permitting procedures for businesses desiring to begin operations on and/or adjacent to the Red River, and has required certain minimum levels of insurance coverage. Specifically, your questions are as follows:
 1) Is the establishment of certain minimum insurance requirements, and particularly specific amounts for liability coverage limits, within the scope of the Commission's power and duty to "regulate" commerce;
 2) If so, are there in existence any standards, regulations or guidelines as to what types of coverage and/or what dollar levels of coverage can be required by a regulating governmental authority as a prerequisite to doing business on the river; and
 3) Would the answer be any different if the business conducted no activities on the river.
R.S. 34:3160 sets forth rights and powers of the commission which it designates extends within the port area of the entire parishes of Caddo and Bossier, but explicitly excludes from the port area any docks, landings or wharves in use on Nov. 8, 1988, and businesses engaged in river operations in the port area on that date. Paragraph (C) provides as follows:
 The commission shall regulate the commerce and traffic within the port area in such a manner as may, in its judgment, be for the best interest of the state. It shall have charge of and administer public wharves, docks, sheds, landings, industrial parks, industrial buildings, and other property or facilities owned, operated or controlled by the commission. It shall have authority to construct or acquire and equip wharves and landings and other structures useful for the commerce of the port area, and provide mechanical facilities therefor; to erect sheds or other structures on said wharves and landings; to provide light, water, police protection and other services for its facilities as it may deem advisable; to construct or acquire, maintain and operate basins, locks, canals, warehouses, and elevators; to charge for the use of all facilities administered by it, and for all services rendered by it; to establish such fees, rates, tariffs or other charges as it may deem fit; to establish harbor lines within the port area by agreement with the United States Army Corps of Engineers; and to construct, own, operate, and maintain terminal rail facilities and other common carrier rail facilities for the purpose of rendering rail transportation to and from the facilities to be erected, owned, or operated by the commission in both intrastate and interstate commerce. The commission shall have authority to plan, finance, develop, construct, and/or acquire industrial parks and/or industrial plant buildings within its port area, including sites and other necessary property or appurtenances therefor, and to acquire, construct, develop, improve, operate, maintain, and provide improvements and services necessary therefor, including but not limited to roads, streets, street lighting, bridges, rail facilities, drainage, sewers, sewerage disposal facilities, solid waste disposal facilities, waterworks and other utilities and related properties. Title to such property and improvements shall be in the public and shall vest in the commission for public administration, subject only to the right of the commission to lease, sell or otherwise dispose of the same in the manner provided in this Chapter.
Paragraph D authorizes the commission to enter into contracts, leases and other agreements with companies interested in transporting or storing goods for use of facilities administered by the commission, and to sell, lease or otherwise dispose of to any enterprise within the port area by contract any industrial plant or other property owned by the commission.
You indicate the Commission has established permitting procedures for businesses "desiring to begin operations on and/or adjacent to the Red River." By telephone, as I understand it, these are private businesses on private property that are not using any facilities of the Commission, except in someway their operation may use the river.
As observed by the Court in Lake Providence Port Commission v.Bunge Corp., 193 So.2d 363 (La.App 1967), the port commission had conferred upon it the right to acquire land, construct wharves and other structures, and to regulate river navigation in East Carroll Parish but did not confer the right to prohibit reasonable use of the property owned by others adjacent to the banks of navigable waters in the parish. Additionally, in Millerv. Greater Baton Rouge Port Commission, 225 La. 1085, 74 So.2d 387
(1954), the court found the jurisdiction conferred upon the port commission did not purport to prevent the legitimate use of private property within the area, and the provision "does nothing more than invest in the port commission the rights and powers which are inherent in the ownership and operation of port facilities and gives it exclusive jurisdiction in order to insure efficient administration of the port's affairs arising under the law creating it."
In Atty. Gen. Op. 79-877 this office found while the port commission can regulate commerce and traffic within the port area, it may not regulate fees charged by private property owners for the use of their own facilities located on private property. It was stated that the statutory authority granted the port commission is entirely void of any authority to prohibit the use of private property.
Likewise, in Atty. Gen. Op. 93-401 this office stated the authority exists for the Port Commission to regulate the commerce and tariffs within the Port area as it deems appropriate for the best interest of the State, and this confers upon the Port authority to regulate any and all barge and vessel traffic within the area of the Port. However, it was further observed there must be some legitimate and rational basis for the Port to prohibit private companies from operating within the area of the Port.
While R.S. 34:3160 sets forth that the Commission "shall regulate the commerce and traffic within the port area in such a manner as may, in its judgment, be for the best interest of the state", we feel this must be read with the statute as a whole to determine its authority. As observed above by the court in the Miller case, the provision did nothing more than invest in the port commission the rights and powers which are inherent in ownership and operation of port facilities. We do not believe the authority to regulate any and all barge and vessel traffic within the port area can be construed to allow setting minimum liability and property insurance coverage by the commission for businesses adjacent to the river.
Although setting required limits for property and liability insurance is not prohibiting the use of private property, we think by following the reasoning of the court decisions, opinions of this office, and reading the statute as a whole, it must be concluded that Caddo-Bossier Parish Port Commission cannot establish specific amounts for property and liability insurance coverage required by these private companies on private land who are not using facilities of the Port Commission. We feel setting insurance requirements for all private businesses on private property who are operating on or adjacent to the river extends beyond the power to regulate the commerce and traffic on the river.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR