# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 03-00136


## CONOCO, INC.


## VERSUS


## HALTER-CALCASIEU, L.L.C., ET AL.


* * * * * * *
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2000-5364 C/W 2001-1911
HONORABLE FRED R. GODWIN, PRESIDING


* * * * * * *
## SYLVIA R. COOKS
## JUDGE
* * * * * * *


Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.


**AFFIRMED.**

**James H. Hohenstein**
**Haight, Gardner, Holland & Knight, L.L.P.**
**195 Broadway**
**New York, NY 10007**
**Telephone: (212) 513-3200**
**COUNSEL FOR APPELLANT:**
    **CITGO Petroleum Corporation**

**William B. Swift**
**Swift, Spears & Harper, L.L.P.**
**First Federal Building**
**P.O. Box 1810**
**Lake Charles, LA 70602**
**Telephone: (337) 433-0707**
**COUNSEL FOR APPELLANT:**
    **CITGO Petroleum Corporation**

**Hugh Ramsey Straub**
**Terriberry, Carroll & Yancey**
**3100 Energy Center**
**1100 Poydras Street**
**New Orleans, LA 70163**
**Telephone: (504) 523-6451**
**COUNSEL FOR APPELLANT:**
      **ConocoPhillips Company**


**Gregory W. Belfour**
**Jones, Tete, Nolen, Fonti & Belfour, L.L.P.**
**1135 Lakeshore Drive, Suite 600**
**Lake Charles, LA 70601**
**Telephone: (337) 439-8315**
**COUNSEL FOR APPELLANT:**
      **ConocoPhillips Company**


**James B. Doyle**
**Woodley, Williams, Boudreau, Norman, Brown & Doyle, L.L.C.**
**500 Kirby Street**
**P.O. Box 3731**
**Lake Charles, LA 70602-3731**
**Telephone: (337) 433-6328**
**COUNSEL FOR APPELLEE:**
      **Halter Calcasieu, L.L.C., et al.**

**COOKS, Judge.**

In this consolidated appeal, the appellants, CITGO Petroleum Corporation and ConocoPhillips, Inc., seek to reverse the judgment of the lower court granting summary judgment in favor of the appellees, and further seek entry of summary judgment in their favor on the issue of liability. Alternatively, CITGO and Conoco request this court vacate the judgment and remand the case to the district court for trial on the issues of whether appellees' actions constituted ultrahazardous activity and/or intentional tort. For the following reasons, we affirm.

## FACTS

On June 13, 2000, Halter-Calcasieu, L.L.C. (hereafter Halter) floated the Calcasieu Dry Dock No. 4, which it operated, to the middle of the Calcasieu River for the purpose of retrieving a disabled vessel and bringing it back to shore for repairs. To accomplish this end, Halter sank the drydock with the intention of lifting the disabled vessel. Once the drydock was sunk, the disabled vessel was moved into position over the drydock's submerged deck. The drydock's ballast tanks were then emptied, which ordinarily would cause it to rise and lift the vessel clear of the water. However, in this instance the drydock did not rise and remained in the middle of the river, effectively blocking traffic from moving up and down the river. Efforts to raise the drydock were unsuccessful and it was eventually declared a total loss and destroyed during the salvage operation.

On October 10, 2000, ConocoPhillips, Inc. filed suit in the Louisiana Fourteenth Judicial District Court (hereafter 14th JDC) alleging economic loss and other inconvenience as a result of the drydock's mishap, and the temporary blocking

of the Calcasieu River.[1] This river affords the only marine access to the Port of Lake Charles and to the property of several riparian owners, including Conoco and CITGO Petroleum Corporation. No property damage or physical injury was alleged by Conoco. The suit by Conoco was grounded exclusively on Louisiana state law.

On December 13, 2000, the defendants filed a Petition for Exoneration from or Limitation of Liability pursuant to the Limitation of Liability Act, 46 U.S.C. App. § 183 *et seq.*, in U.S. District Court. The Federal Court issued an order enjoining any actions in other forums.

Conoco then filed a motion to dismiss the Limitation Petition on the basis that the drydock was not a vessel. CITGO filed an identical petition. The Federal Court directed that the motions be converted to motions for summary judgment.

In view of the prescriptive period under Louisiana law, CITGO obtained permission from the Federal Court to lift the Limitation Act stay to allow CITGO to file an action in the 14th JDC. CITGO then filed its Petition for Damages in the district court on April 11, 2001, against the Halter defendants.[2] Following CITGO's

---

[1] Named as defendants were Halter, Friede Goldman Halter, Inc., Friede Goldman Offshore Texas, Limited Partnership, Certain Subscribing Underwriters on Cover Note 22402/1/2/CCICF issued through Newman, Martin & Buchan Ltd., including certain Interested Underwriters at Lloyd's, London and Certain Subscribing London companies, Commercial Union Insurance Company P.L.C., Zurich Specialties (London) Ltd. and the Marine Insurance Company Ltd.

[2] On April 19, 2001, one of the defendants, Friede Goldman Halter, filed a bankruptcy petition in the Biloxi Bankruptcy Court. The following day, Friede Offshore, filed for similar relief. Halter had not filed such a petition, therefore the Limitation Act proceeding against it continued in Federal Court. On May 21, 2001, Halter filed a motion for summary judgment in the Limitation Petition action. Halter argued that the CITGO and Conoco claims were precluded by maritime precedent. CITGO and Conoco filed oppositions to this motion.
On June 1, 2001, Halter filed its Chapter 11 petition in the Biloxi Bankruptcy Court. However, notice of this filing was not given to CITGO and Conoco's counsel as well as Halter's Louisiana counsel. On June 8, 2001, Conoco filed its Amended Petition for Damages in the 14th JDC against the defendants. The Federal Court lifted

filing, the matters were consolidated.[3]

On June 13, 2001, the Federal Court issued a Memorandum Ruling concerning CITGO's and Conoco's summary judgment motions. *In re Halter-Calcasieu, L.L.C.,* 2001 WL 1435468 (W.D.La. 2001). The Federal Court held that Halter was not entitled to the limitation of liability because it failed to establish that the drydock was a vessel under Title I, § 3 of the United States Code. Thus, it concluded that its admiralty jurisdiction did not apply to the drydock.[4]

On August 9, 2001, defendants filed their Exceptions and Answers to Conoco's petition in the 14th JDC. On October 2, 2001, defendants also filed Exceptions and Answers to CITGO's petition.

On November 6, 2001, the Bankruptcy Court lifted the stay to await a merit determination of Conoco's and CITGO's claims by the 14th JDC. The stay was not lifted to allow execution upon any resulting judgments, requiring Conoco and CITGO to return to bankruptcy court in order to collect upon any possible judgments.

At the beginning of argument in the 14th JDC, counsel for the Halter defendants informed the trial judge of its intention to remove the litigation to the federal court

---

the Limitation act stay to allow Conoco to amend its pleading in the 14th JDC to add Halter's underwriters as parties. CITGO also filed a First Amended Petition for Damages.

[3] For the disposition of the companion case, see *Conoco, Inc. v. Halter Calcasieu, L.L.C. et al.*, 03-137 (La.App. 3 Cir. __/__/03), ___ So.2d ___.

[4] CITGO and Conoco then filed motions for relief in the Biloxi Bankruptcy Court. On July 24, 2001, the court ordered that the CITGO and Conoco motions be consolidated. The court allowed the action in the 14th JDC to proceed to obtain responsive pleadings from the Underwriters and to conduct discovery regarding insurance coverage. The court also modified the automatic stay to ratify all actions taken and pleadings filed in the 14th JDC. The bankruptcy court also directed the parties to report no later than October 24, 2001, so it could determine the balance of CITGO's and Conoco's motion for relief from the bankruptcy stay.

based on bankruptcy law. On December 4, 2001, defendants removed the actions pending in the 14th JDC to Federal Court, based on the applicability of various bankruptcy statutes. Conoco and CITGO opposed the removal and moved for remand and abstention. On May 14, 2002, the Federal Court granted the motions to remand and abstain.

On August 12, 2002, Conoco and CITGO filed their Joint Motion for Partial Summary Judgment for Liability Only. Defendants opposed the motion, filing a cross-motion for Summary Judgment and asserted exceptions of no cause and no right of action. Hearings on the motions were held, and in a judgment dated December 7, 2002, the trial court denied the Joint Motion for Partial Summary Judgment for Liability Only filed by Conoco and CITGO. The trial court also granted the Halter defendants' cross-motion for Summary Judgment finding the "presence of the dock on the river bottom was an obstruction of navigation and that admiralty law would apply." The trial court also found the pleadings and evidence insufficient to support a finding of an intentional tort or ultrahazardous activity.

Conoco and CITGO have appealed the trial court's judgment, asserting the following assignments of error[5]:

> (1) The district court erred in finding that maritime law rather than Louisiana law applied in the case, and specifically, that this dispute was between riparian landowners whose rights are protected by Louisiana Civil Code arts. 656-658;

> (2) The district court erred in not following the earlier determination of the Federal District Court that admiralty jurisdiction did not attach to Halter's drydock;

---

[5] CITGO and Conoco have each filed an appeal, but for purposes of discussion their assignments of error have been combined when appropriate.

(3)   The district court erred in excluding evidence and in denying the opportunity to prove at trial Halter's actions constituted an intentional tort and ultrahazardous activity.

**ANALYSIS**

CITGO and Conoco both argue the trial court erred in finding that maritime law, rather than Louisiana law, governs this case. Both point to the decision rendered on June 13, 2001 by the Federal Court, finding Halter failed to establish that the drydock was a vessel under Title I, § 3 of the United States Code. As noted, the issue before the federal court was whether the drydock was a "vessel" under maritime law and thus whether Halter's action for exoneration from or limitation of liability under the Limitation of Liability Act, 46 U.S.C.App. § 181 *et seq*, was appropriate. The Limitation Act allows a vessel owner to limit liability for damage or injury to the value of the vessel or the owner's interest in the vessel. The federal court narrowly ruled in the limitation action that defendants were not entitled to pursue relief under the Limitation Act because they could not establish that the drydock was a vessel, a prerequisite to liability limitation.

The district court examined the Federal Court's finding that the drydock was not a vessel and specifically found this holding was not a "determinative point" on the question of whether maritime law applied in this matter. We too are not persuaded by CITGO and Conoco's argument that the ruling by the Federal Court in a collateral claim amounts to a "law of the case" finding on the question of maritime jurisdiction. We also note the Federal Court specifically held "Halter's Summary Judgment Motion should be decided by [the 14th Judicial District Court]." *In re Halter-Calcasieu*, p. 3.

Whether a tort action is maritime in nature and governed by admiralty

jurisdiction hinges on it satisfying two tests. The first, the locality test, is met *if the tort occurred on navigable waters* or the injury suffered on land was caused by a vessel on navigable waters. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043 (1995); 46 U.S.C.App. § 740. The second test is met when the tort bears a "significant connection to a traditional maritime activity." This test consists of two prongs: (1) the incident must have a "potentially disruptive impact on maritime commerce," and (2) "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.* 513 U.S. at 534, 115 S.Ct. at 1048, quoting *Sisson v. Ruby*, 497 U.S. 358, 363-65, 110 S.Ct. 2892, 2896 (1990).

There seems little doubt the "locality test" is satisfied in the present case. The drydock was moved into the Calcasieu River ship channel in order to dock a damaged vessel. The Calcasieu River ship channel is a navigable waterway. CITGO and Conoco argue the proper locus of the tort was at their "land-based riparian-located refinery." We disagree. In *Harp v. Pine Bluff Sand & Gravel Co.*, 98-1634 (La.App. 3 Cir. 11/24/99), 750 So.2d 226, a tug boat damaged a bridge over the Black River in Concordia Parish. The plaintiffs in *Harp* filed suit alleging they "suffered severe and grave economic damages to individuals and businesses . . ., lost sales, inconvenience, increased transportation cost and lost time from work as a result of the closure of the bridge." *Id.* at 227. This court held the plaintiffs failed to state a cause of action based on *Robins Dry Dock v. Flint*, 275 U.S. 303, 48 S.Ct. 134 (1927), because they did not suffer any physical damage to their own property. We are also convinced the second test is met in this case. The purpose of moving Halter's drydock

-6-

into the middle of the channel to retrieve the disabled vessel and bring it back to shore for repairs is an activity which has a "substantial relationship to traditional maritime activity."

*Robins*, *supra*., set forth the principal that a plaintiff will be denied recovery for economic loss based on state law, absent a showing of a physical injury to a proprietary interest. In *Robins*, the charterer of a steamship sued for his lost profits when his propeller was damaged by the defendant drydock. The replacement of the propeller required the steamship to remain in drydock for two extra weeks. The charterer sued for the loss of use of the vessel for that period. The *Robins* court denied recovery stating:

> . . . no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread its protection so far. (Citation omitted)

*Id.*, 275 U.S. at 309, 48 S.Ct. at 135.

The United States Fifth Circuit sitting *en banc* in *State of Louisiana, et al. v. M/V Testbank*, 752 F.2d 1019, 1023 (5th Cir.1985), examined the ruling in *Robins*, noting it "was a pragmatic limitation imposed by the Court upon the tort doctrine of foreseeability." In *Testbank* two vessels collided with each other on the Mississippi River Gulf Outlet and caused a chemical spill, resulting in the closure of that outlet for several weeks. Suits were filed by shipping companies, fishermen, restaurants, marinas and other businesses to recover for the economic loss they suffered from the closure of the outlet. Stressing the *Robins* "pragmatic limitation" on foreseeability the fifth circuit refused "to abandon physical damage to a proprietary interest as a

prerequisite to recovery for economic loss in cases of unintentional maritime tort." *Id.* at 1020. Our court in *Harp*, 750 So.2d at 230, noted that the "courts have remained dedicated to the principal set forth in *Robins* and have been reluctant to recognize claims based solely on harm to the interest of business expectancy." Because CITGO and Conoco did not suffer any physical injury, their claims for purely economic loss must be denied.

CITGO and Conoco argue their claims arose from their status as riparian landowners who were damaged by the actions and omissions of another riparian landowner who failed to conduct its land-based business activity as a shipyard in a reasonable and prudent manner. They argue the blockage of the river by the sunken dry dock effectively denied all riparian landowners of the use of their waterfront property.

In support of this argument, CITGO and Conoco rely on *Shaughnessy v. P.P.G. Indus., Inc.*, 795 F.Supp. 193 (W.D.La. 1992), pointing out the *Shaughnessy* court found the *Robins* rule did not preclude a fishing guide from recovering economic losses resulting from the pollution of bodies of water caused by the discharge of contaminants from the defendant's property. The court found Shaughnessy, who operated a fishing guide service, did "have physical impact, if not damage," from the defendant's action. The court noted that "Shaughnessy has rights protected by Civil Code Article 656, which provides that '[t]he owner of the servient estate may not do anything to prevent the flow of water [and the] owner of the dominant estate may not do anything to render the servitude more burdensome'" *Id.* at p. 196. The court in *Shaughnessy* stressed that it felt the wrong committed by the defendant in that case

-8-

was "decidedly land based for which the tort of nuisance exists." The court also concluded Shaughnessy was "entitled to treatment as a commercial fisherman," and thus exempted from the proprietary or physical injury requirement of *Robins* as set forth in *Testbank* and *Union Oil Company v. Oppen*, 501 F.2d 558 (9th Cir.1974).

We find *Shaughnessy* is inapplicable to the case at hand. The activity complained of in *Shaughnessy*, the pollution of adjacent waterways by a land based chemical plant, was specifically held "decidedly land based." The drydock in this case blocked traffic in the middle of the Calcasieu River. Further, the court in *Shaughnessy* found the claimant belonged to a specific category, i.e, commercial fishermen, which was exempted from the *Robins* rule. CITGO and Conoco are entitled to no such protection.

In the case of *In re: Complaint of Transocean Offshore (U.K.), Inc.*, 2001 WL 1490867 (E.D.La.), the plaintiffs sought damages against a vessel owner when an anchor on a drilling rig was left hanging and drug the sea floor, damaging a pipeline. The claimants did not have any ownership or proprietary interest in the pipeline that was damaged, but sought damages in the form of lost product and delayed production. The plaintiffs attempted to avoid the *Robins* rule by arguing that their situation fell within an exception, specifically that they were exercising a public right granted to them. In support of this argument they cited *Shaughnessy*. In finding *Shaughnessy* inapplicable the *Transocean* court stated:

> This Court however, is not persuaded by these cases, but rather believes the situation presented herein is more analagous to the more recent case, *Reserve Mooring, Inc. v. American Commercial Barge Lines*, 1999 WL 1080317 (E.D.La.) *reversed*, 251 F.3d 1069 (5th Cir.2001). In *Reserve Mooring*, the plaintiff operated a mooring facility pursuant to a permit granted by the U.S. Army Corps of Engineers.

-9-

While the accident did not cause any physical damage to the mooring facility, the site had to be closed due to the salvage operations of the sunken barge, which resulted in lost income. The District Court found that while plaintiff did not own the mooring block, it did have a permit to operate; therefore, it was held that plaintiff did possess a proprietary interest and allowed recovery for economic damages. *Id.* The Fifth Circuit, however, reversed that ruling stating that it "has not retreated from TESTBANK's physical injury requirement." *Reserve Mooring*, 251 F.3d at 1071. The Court noted:

> [m]erely because other vessels were unable to moor at Reserve's facility for a period of time, however, does not mean that Reserve has suffered physical injury entitling it to recover purely economic losses.

*Id.* As such, it was held that under *Testbank*, physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort; thus, the claim for purely economic damages was denied. *Id.*

We find *Transocean* and *Reserve Mooring* more analogous to the instant case and likewise find no reason to depart from the well-settled holdings of *Robins* and *Testbank*.

The claims of CITGO and Conoco under state law are based on the existence of a legal servitude created by La.Civ.Code art. 665, which states:

> Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levies, roads, and other public or common works.

CITGO and Conoco also assert a cause of action arising from the duties imposed on property owners by La.Civ.Code art. 667, which reads in pertinent part:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage,

that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . .

The law only prevents riparian owners from placing improvements on its land if the placement of the improvements obstructs the navigable stream. *Lake Providence Port Commission v. Bunge Corporation*, 193 So.2d 363 (La.App. 2 Cir.), *writ denied*, 195 So.2d 147 (La. 1966). It is not alleged that any works or improvements made on Halter's property obstructed the river. Rather, it is alleged that it was Halter's use of a movable, the drydock, which caused the obstruction, and the obstruction was occasioned by Halter's failure to maintain the drydock. CITGO and Conoco argue that Halter's act of moving the drydock to the center of the river in order to repair a vessel is a violation of a servitude rather than an act of negligence. This interpretation of a servitude statute is not favored by the courts. In *Meyers v. Denton*, 99-574 (La.App. 3 Cir. 10/6/99), 747 So.2d 633, 638, *writ denied*, (La. 2/18/00), 754 So.2d 974, we stated as follows:

> In *Warner v. Clarke*, 232 So.2d 99, 102 (La.App. 2 Cir.), *writ denied*, 255 La. 918, 233 So.2d 565 (1970) that court stated:
>
> > Our courts have repeatedly held that the riparian servitudes are not subject to a broad and liberal construction, as contended by the plaintiffs, but exist "only for that which is incident to the nature and the navigable character of the stream washing the land of such proprietor." *Herbert [Hebert] v. T.L. James & Company, Inc. et al.*, 224 La. 498, 70 So.2d 102, 106 (1953), quoting from *Carollton [Carrollton] R. Company v. Winthrop*, 5 La.Ann. 36 (1850); *Lake Providence Port Commission v. Bunge Corporation*, [(]La.App. [2 Cir. 11/29/66)], 193 So.2d 363.
>
> Thus, construing the above law, riparian servitudes, being in derogation of private property rights, must be strictly construed in accordance with the law and not given a broad, liberal interpretation. *Warner*, 232 So.2d 99.

-11-

We find the articles on servitudes and neighboring estates do not create a separate right of action that is not subject to the rule established in *Robins* and *Testbank*.

***Intentional Tort/Ultra-hazardous Activity.***

CITGO and Conoco argue even were maritime law to apply here, they are not prevented by *Robins* and *Testbank* from proceeding against Halter. They contend at the very least they are entitled to a trial on the issues of whether Halter committed an intentional tort or was engaged in ultra-hazardous activity. *Testbank* specifically noted it did "not address intentional tort or ultra-hazardous activity." *Testbank*, 752 F.2d at 1023.[6]

The Louisiana Supreme Court has concluded a party has committed an intentional act only when one of two things is true: (1) the actor "consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct"; or (2) the actor "knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Cole v. Department of Public Safety & Corrections*, 01-2123, p. 30-31 (La.9/4/02), 825 So.2d 1134, 1140. It is well established that "mere knowledge and appreciation of a risk does not constitute intent." *Reeves v. Structural Preservation Systems*, 98-1795, p. 9-10 (La.3/12/99), 731 So.2d 208, 213. Even gross negligence does not meet the intentional act requirement. See *In re Hunter*, 02-1975 (La.8/19/02), 823 So.2d 325. While Halter's decision to sink the drydock, which obviously was in poor condition, might constitute gross negligence, the record simply does not show that it constituted

---

[6]Commission of an intentional tort or being engaged in ultra-hazardous activity are expressly excluded from the proprietary or physical injury requirement set forth in *Robins/Testbank*.

an intentional tort.

Ultra-hazardous activities are determined as a matter of policy, after a balancing of claims and interests, a weighing of the risk and the gravity of harm, and the consideration of the individual and societal rights and obligations. *Kent v. Gulf States Utilities Co.*, 418 So.2d 493 (La.1982); *Langlois v. Allied Chemical Corporation*, 258 La. 1067, 249 So.2d 133 (1971). Such activities have included pile driving, storage of toxic gas, blasting with explosives, and crop dusting with airplanes. *Id.*

The courts of this state have generally adopted a three-prong test for the determination of the existence of an ultra-hazardous activity. *Bartlett v. Browning-Ferris Industries, Chemical Services, Inc.*, 96-218 (La.App. 3 Cir. 11/6/96), 683 So.2d 1319. The court described the test in *Burton v. Conoco Offshore, Inc.*, 93-599, p. 4-5 (La.App. 5 Cir. 2/9/94), 631 So.2d 1374, 1377, as follows:

> Our brothers of the First Circuit implemented the United States Fifth Circuit three-prong test in determining whether an activity is ultrahazardous, to-wit: "(1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury." *Triplette v. Exxon Corp.*, supra, [554 So.2d 1361] at 1362 [La.App. 1st Cir.1989] (citing *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1267-68 ([5th Cir.]1985)).

The record here contains no evidence that the third prong is satisfied in this matter. There is no indication a drydock cannot be safely operated if due care is exercised. In fact, it is apparent that the use for which Halter relied on the drydock is a common practice, and if in proper condition would not cause harm to the residents of the area in which it is situated. Therefore, the evidence does not support a finding that operation of the drydock was an ultra-hazardous activity. Accordingly, we find no

error in the district court's grant of the exception of no cause of action.

***Failure to Consider Evidence***

Conoco asserts that the district court erred in failing to consider the affidavit and report of Ian Cairns, a marine surveyor. The trial court limited Cairns' expert testimony to that which he personally observed. The excluded evidence is relied upon by Conoco to establish that the fault of Halter constituted ultrahazardous and/or intentional activity.

Conoco relies on the Louisiana Supreme Court's decision in *Independent Fire Insurance Co. v. Sunbeam Corp.*, (La. 2/29/00), 755 So.2d 226, in support of its argument that the affidavit and report should have been admitted by the district court.

La.Code Civ.P. art. 967 requires that affidavits "shall be made on personal knowledge. . ." That article does not require trial courts to accept conclusory assertions by an expert witness. The court in *Independent Fire* cited with approval *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88 (1st Cir. 1993), *cert. denied*, 511 U.S. 1126, 114 S.Ct. 2133 (1994), which noted that "where an expert presents 'nothing but conclusions - no facts, no hint of an inferential process, no discussion of hypotheses considered or rejected,' such testimony will be insufficient to defeat a motion for summary judgment." *Independent Fire*, 755 So.2d at 233. We find no error on the trial court's part in excluding this evidence.

**DECREE**

For the foregoing reasons, the judgment of the district court is affirmed. All costs of this appeal are assessed equally to the appellants, CITGO Petroleum Corporation and ConocoPhillips, Inc.

**AFFIRMED.**