STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

RANDY TRAHAN

VERSUS

TELEFLEX, INC., TELEFLEX MORSE, INC., ALLEN JOSEPH TRAHAN,
MARSHLAND MARINE, INC., CNA INSURANCE COMPANY, AND
STATE FARM FIRE AND CASUALTY INSURANCE COMPANY

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-3183
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

Wells Watson
3006 Country Club Rd.
Lake Charles, LA  70605
Counsel for Plaintiff-Appellee:
      Randy Trahan

David Frohn
Robin Anderson
One Lakeshore Dr., Suite 1220
Lake Charles, LA  70601
Counsel for Defendant-Appellant:
      Teleflex, Inc. & Teleflex Morse

**PAINTER, Judge**.

The Defendant, Teleflex, Inc. ("Teleflex"), appeals the trial court's determination that no material issue of fact remains but that English Bayou is a navigable waterway for purposes of admiralty jurisdiction.

FACTS

On August 16, 2002, Randy Trahan was riding as a passenger in a seventeen-foot Stratos Outboard water craft, which he owned but which was being operated by his brother, Allen Joseph Trahan. They were going east on English Bayou. After going under the Highway 171 bridge, the steering cable broke causing the boat to make a sharp turn to the right. As a result, Randy Trahan was thrown out of the boat and incurred injuries to his right arm, shoulder, and neck. He filed suit on June 12, 2003, asserting that Teleflex, manufacturer of the steering cable, was liable under maritime products liability and general maritime law.

Teleflex filed exceptions of lack of subject matter jurisdiction and prescription. In its exceptions, it argued that English Bayou is not a navigable waterway so as to give rise to admiralty jurisdiction and that, in the absence of a maritime claim, the matter is prescribed. Randy Trahan filed a motion for partial summary judgment asserting that no genuine issue of fact remained but that English Bayou is a navigable waterway, and that the accident has a maritime nexus.

The trial court, after a hearing, found that "English Bayou in the area where this accident happened, which is very close to where the bridge is, is navigable." As a result, the court denied the exception of lack of subject matter jurisdiction and granted the motion for partial summary judgment. The court, in its oral reasons for judgment, cited evidence of tugboats using the bayou about a half mile downstream

1

865 So.2d 813 from the accident site, a bridge over the bayou designed to open for boat traffic, and the Highway 171 bridge, which has a span of one hundred feet wide and is twenty feet high.

Teleflex appeals.

SUBJECT MATTER JURISDICTION

Teleflex asserts that the trial court erred in denying its exception of lack of subject matter jurisdiction.

> Whether a tort action is maritime in nature and governed by admiralty jurisdiction hinges on it satisfying two tests. The first, the locality test, is met *if the tort occurred on navigable waters* or the injury suffered on land was caused by a vessel on navigable waters. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); 46 U.S.C.App. § 740. The second test is met when the tort bears a "significant connection to a traditional maritime activity." This test consists of two prongs: (1) the incident must have a "potentially disruptive impact on maritime commerce," and (2) "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.* 513 U.S. at 534, 115 S.Ct. at 1048, quoting *Sisson v. Ruby*, 497 U.S. 358, 363-65, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990).

*Conoco, Inc. v. Halter-Calcasieu, L.L.C.*, 03-136, p. 6 (La.App. 3 Cir. 11/19/03), 865 So.2d 813, 818, *writ denied*, 03-3493 (La. 3/12/04), 869 So.2d 822.

The mover has the burden of proof on an exception of lack of subject matter jurisdiction. *Smith v. Gretna Mach. & Iron Works*, 617 So.2d 144, (La.App. 5 Cir. 1993). In the case *sub judice*, Teleflex does not argue that the activity giving rise to the incident does not show a "substantial relationship to traditional maritime activity." *Conoco*, 865 So.2d 813. Rather, it alleges that English Bayou is not navigable at the site of the accident.

> In Louisiana, waterways are navigable in law when they are used or susceptible of being used in their natural and ordinary condition as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on the water.

> *Ramsey River Road Property Owners Association, Inc. v. Reeves*, 396 So.2d 873, 876 (La.1981). Simply stated, a water course is navigable when by its depth, width and location it is rendered available for commerce. *Shell Oil Company*, 476 So.2d at 1036.

*Naquin v. Louisiana Power & Light Co.*, 98-2270, fn. 4 (La.App. 1 Cir. 3/31/00), 768 So.2d 605, *writ denied*, 00-1741 (La. 9/15/00), 769 So.2d 546.

The testimony at the hearing on the exception was as follows. Michael Whitler, Superintendent of Gravity District #4 of Calcasieu Parish, testified that, for the last eighteen years, he has worked at the pumping station located on English Bayou two miles east of the Highway 171 bridge. He stated that he has never seen barges or tugboats going up or down the bayou. He works from 6:00 a.m. until 4:30 p.m, Monday through Thursday, and is away from the pumping station about half the time. He admitted that he has seen bass boats engaged in tournament fishing for prize money on English Bayou and knows that it is possible to travel from the pumping station to the Gulf of Mexico on English Bayou. Whitler further admitted that when he is at the pumping station, he is in his office and spends very little time looking at the bayou.

George Bass testified that he worked as an engineer for the Louisiana Department of Transportation and Development, and that, from about 1972, part of his work involved maintaining the bridges over English Bayou. He stated that he never saw the old bridge opened and was not aware of any time when it was opened. He admitted, however, that he did not have anything to do with the old bridge in the course of his work with the DOTD. He stated that he did not know how deep the bayou was at the place the new bridge was built.

Edwin Olmstead testified, that twenty-five years previously, his uncle towed an old tugboat up the bayou, under the old bridge, scrapped it out, and abandoned it.

3

He admitted that it is possible to go from his shipyard on Contraband Bayou up English Bayou and under the Highway 171 bridge.

Dr. George Castille, III testified that he works doing geoforensics for Coastal Environments, an environmental consulting firm. He was qualified as an expert geographer. He testified that, in the course of his investigation, he traveled up English Bayou to the Highway 397 bridge and that the bayou is between seventy-five and one hundred feet wide and eleven feet deep at that point. He stated that he did not travel further up the bayou because the opening under the bridge at Highway 397 was a little narrow. He testified that he went under the Highway 171 bridge on his way up the bayou and that the central opening of that bridge is about 100 feet wide and that the bridge is about nineteen feet above the water. He admitted that it is possible to travel by water from the Highway 171 bridge on English Bayou all the way into the Gulf of Mexico. He admitted that he had seen evidence of pullboat logging east of the Highway 171 bridge. He further stated that small barges and some types of commercial fishing boats could operate on English Bayou.

Additionally, all of the exhibits attached to the exception and memoranda were introduced into evidence. These consist of maps and photographs of English Bayou filed with the exception, Teleflex's supporting memoranda, and the documents attached to Trahan's "Supplemental Memorandum in Support of Motion for Summary Judgment and in Opposition to Exceptions." Trahan's exhibits incorporate Coast Guard rules and regulations, a "Bridge Over Navigable Waters of the United States Completion Report" concerning the new Highway 171 bridge over English Bayou. Additionally made part of Trahan's exhibits are U.S. Army Corps of Engineers documents which state that the "bridge will have no adverse affect on present or

4

future navigation for this section of the waterway" and which indicate that the old swing bridge was only opened twenty-five times for passage of navigation between 1945 and 1950 and was not opened thereafter, as well as navigation bulletins notifying mariners about the construction of the new bridge.

Given the evidence before this court in connection with the exception of lack of subject matter jurisdiction, we find that Teleflex failed to carry its burden of showing that English Bayou is not "susceptible of being used in their natural and ordinary condition as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on the water." *Naquin*, 768 So.2d at fn. 4. Therefore, we find no error in the trial court's decision to deny the motion.

SUMMARY JUDGMENT

We next consider Teleflex's assertion that the trial court erred in granting Trahan's motion for partial summary judgment with regard to the navigability of English Bayou.

> We review summary judgments *de novo*, asking the same questions the trial court previously asked in determining whether summary judgment is appropriate. *Champagne v. Ward*, 03-3211 (La.1/19/05); 893 So.2d 773. This inquiry seeks to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751, *quoting S. La. Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir.1991), *writs denied*, 596 So.2d 211 (La.1992). If issues regarding subjective facts are present, such as intent, knowledge, motive, malice, or good faith, a summary judgment determination is usually not appropriate. *Murphy's Lease & Welding Serv., Inc. v. Bayou Concessions Salvage, Inc.*, 00-978 (La.App. 3 Cir. 3/8/01), 780 So.2d 1284, *writ denied*, 01-1005 (La.6/1/01), 793 So.2d 195. Credibility determinations are also inappropriate in summary judgment procedure. *Hines v. Garrett*, 04-0806 (La.6/25/04), 876 So.2d 764. "[T]he trier of

5

fact who has the opportunity to hear all the evidence and to observe the witnesses" should make such determinations. *Belgard v. Am. Freightways, Inc.*, 99-1067, p. 5 (La.App. 3 Cir. 12/29/99), 755 So.2d 982, 986, *writ denied*, 00-293 (La.3/31/00), 756 So.2d 1147.

*Myles v. Consolidated Companies, Inc.*, 05-192, p. 4 (La.App. 3 Cir. 6/1/05), 906 So.2d 677, 680.

The hearing on the motion for partial summary judgment was held at the same time as the hearing on the exception of lack of subject matter jurisdiction. At the end of that hearing, the trial court ruled both on the exception and on the motion for partial summary judgment. We note that the testimony adduced at the hearing cannot be used in reviewing the motion for summary judgment:

Oral testimony should not be received or considered in deciding a motion for summary judgment. *Wattigny v. Lambert*, 453 So.2d 1272 (La.App. 3 Cir.1984), *appeal after remand*, 490 So.2d 1115 (La.App. 3 Cir.), *writ denied*, 493 So.2d 1221 (La.1986); *Urban Management Corp. v. Burns*, 427 So.2d 1310 (La.App. 2 Cir.1983).

*Lewis v. Rodriguez*, 95-1035, p. 5 (La.App. 3 Cir. 3/20/96), 671 So.2d 1062, 1064-65.

Navigability is a question of fact and must be proven. *Naquin*, 768 at fn. 4. Therefore, we will examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to determine whether any question remains in this case as to the navigability of English Bayou. La.Code Civ.P. art. 966.

Trahan supported his motion with a number of documents. Attached to a memorandum in support of the motion was an excerpt from the deposition of George Castille, III, the Defendant's expert. The excerpt included Castille's testimony that English Bayou is navigable under some definitions, that he saw evidence of commercial pull-boat logging on the bayou, and that pull boat barges are from forty to fifty feet in length. It further includes his testimony that a small barge could float

on English Bayou, that some types of commercial fishing can be done in a twenty-foot boat, and that a ferry operated on English Bayou until 1924 when the first bridge was built. Also attached to a supporting memorandum was the affidavit of D. Walter Jessen, a registered land surveyor who made measurements of English Bayou. He noted that the clearance of the Highway 171 bridge is from sixteen to twenty feet depending on the water level of the bayou. He further noted that aerial photos show scars from pull boat barges which pulled logs from points east of the bridge into the bayou to float to mills downstream.

The affidavit of Nola Mae Ross, also attached to Trahan's memorandum, contains her sworn statement that she is an author and historian specializing in the history of southwest Louisiana and Calcasieu Parish. She stated that Native Americans used English Bayou to conduct trade, that in 1819 Jean Lafitte made trips up the Calcasieu River and into English Bayou to the home of Arsene LeBleu, that a ferry existed which took people and livestock across the bayou and that Old Spanish Trail crossed the bayou near the LeBleu property. She further opined that equipment needed for building pumping stations for irrigation in 1902 and 1905 would have been transported by boat up the bayou. She stated that the bayou was used to transport rafts of logs, sometimes measuring more than a mile long, downstream to saw mills in Lake Charles.

Trahan also submitted an affidavit and a supplemental affidavit by E. D. Perry, a seventy-seven year-old commercial fisherman, in support of the motion for partial summary judgment. He stated that he fishes commercially on the bayou, with lines in the bayou east of the Highway 171 bridge, and sells the fish both from his home and to fish markets. He stated that he mostly owned twelve- to sixteen-foot fishing

7

boats but once operated a twenty foot boat. Additionally, Mr. Perry stated that he had once helped push a twenty-three by eighty foot barge up the bayou to the Goodman Road area. He saw pull boat logging on the bayou as a boy. According to Mr. Perry, the Bass-Harliss Lumber Mill once had a mill near the mouth of English Bayou and could "crib" logs and float them on the bayou while waiting to saw them. Tugs would push or pull the logs, which were attached to each other, from the mouth of the bayou up to the first two bays, a little west of the old highway bridge.

The affidavit of William G. Castle, Jr. also supported the motion. Mr. Castle attested that his family owned property between English Bayou and Old Town Bay. His family cut timber and floated it down English Bayou to the Calcasieu River and on to lumber mills in Lake Charles. He stated that he has seen large, mostly recreational, cabin cruisers on English Bayou as well as barges of commercial size. He attested that he has personal knowledge of the bayou and opined that it is capable of sustaining commerce.

The existence of commercial logging was reasserted by the affidavit of Chad Theilen, who stated that he is familiar with pull boat operations, has seen pull boat cuts on English Bayou, and once built cabinets for the Castle family from cypress "sinker" logs pulled out of the bayou.

The affidavit of Bradford Mayo, President of Mayo Land Title Co., affirmed that a search was made of the title records in the Calcasieu Parish Clerk of Court's Office which found no claim by a private person or corporation to the beds or bottoms of English Bayou.

Also attached to the memorandum was a copy of the Calcasieu Parish Police Jury Office Emergency Operations Plan which identifies English Bayou as one of

8

"other" waterways which are navigable. Additionally, in support of his motion, Trahan attached a number of Coast Guard Bulletins for mariners containing warnings with regard to the navigability of English Bayou during the building of the Highway 171 bridge, as well as other documents regarding bridge construction.

In support of its opposition to Trahan's motion, Teleflex attached the affidavit of Castille. Castille attested that he has engaged in navigability and water bottoms research for twenty years and has performed navigability investigations for State agencies and private citizens. He affirmed that he conducted a search of historical documents related to the history of Lake Charles and found no reference to any commercial activity on English Bayou. He opined that in the late nineteenth century the bayou was smaller near the accident site than the present channel. He stated that his examination of aerial photos show evidence of pull boat logging downstream, or west, of the Highway 171 bridge but that he saw no evidence of pull boat logging in the vicinity or east of the Highway 171 bridge. Castille's affidavit shows that his reconnaissance of the bridge showed that the channel varied in width from four hundred to seventy-five feet and in depth from five to nine feet east of the bridge and from ten to fifteen feet west of the bridge. He attested that he observed no commercial use of the bayou, that it is not used for importing or interstate commerce, and that English Bayou is a terminal water body that does not serve as a connection between other navigable waterways. He compared the Highway 171 bridge over English Bayou to its bridge over the east fork of the Calcasieu River. He found that the east fork bridge has a clearance of forty feet as compared to a twenty foot clearance for the English Bayou bridge, that it has wooden fenders flanking a much

9

wider navigation passage, and that, unlike the bridge over the east fork, the English Bayou bridge is constructed as if no commercial traffic is expected.

Although, the documents submitted in support of Teleflex's opposition to the motion for summary judgment call into question whether English Bayou is currently being used for commerce, they do not contradict the evidence submitted by Trahan which shows that the bayou is **susceptible** to being used as a highway for commerce. After examining the pleadings, depositions, and affidavits, we find it has been established that English Bayou is "susceptible of being used in [its] natural and ordinary condition as [a] highway[ ] for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on the water." *Naquin*, 768 So.2d at fn. 4. Accordingly, under the facts of this case, we find that no question of fact remains as to the navigability of English Bayou. Therefore, the trial court correctly granted Trahan's motion for partial summary judgment.

CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Defendant-Appellant, Teleflex, Inc.

AFFIRMED.